IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHARLES BANNISTER,

    Plaintiff,

      v.

R. L. CONWAY
"BUTCH", et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:12-CV-1487-TWT

## OPINION AND ORDER

This is a civil rights action arising out of the Plaintiff's wrongful arrest for DUI. It is before the Court on the Defendant Conway's Motion for Summary Judgment [Doc. 57], and the Defendants Benson and Cummings' Motion for Summary Judgment [Doc. 55].   For the reasons set forth below, the Defendant Conway's Motion for Summary Judgment [Doc. 57] is GRANTED, and the Defendants Benson and Cummings' Motion for Summary Judgment [Doc. 55] is GRANTED.

## I. Background

This case arises out of the June 28, 2010 arrest of the Plaintiff Charles Bannister on suspicion of driving under the influence of alcohol. The Plaintiff was the Chairman

of the Gwinnett County Commission. (Compl. ¶ 11.) Prior to the date of the arrest, the Plaintiff allegedly had personal conflicts with the Gwinnett County Sheriff, the Defendant R. L. Conway. (Compl. ¶ 22.) These alleged conflicts arose out of the positions taken by the Plaintiff, such as his "opposition to certain budgetary requests for the Sheriff's Office made by Defendant Conway" and his opposition to "Conway's scheme [which] improperly inflated retirement pay" for "certain Sheriff's Office employees." (Compl. ¶¶ 28-30.) These conflicts resulted in Conway filming a campaign commercial opposing the Plaintiff's re-election. (Compl. ¶¶ 47-49.)

On June 28, 2010, the Plaintiff was seen entering a restaurant by David Nesmith. (Pl.'s Statement of Facts ¶ 4.) Nesmith witnessed the Plaintiff consuming alcohol, and believed that it was a violation of county policy for the Plaintiff to be consuming alcohol while operating a county vehicle. (Id. ¶ 8.) Nesmith then called Robert Taormina, a member of the Sheriff's Department who was off duty at the time. (Id. at 6.) Nesmith told Taormina what he had seen, and Taormina notified his supervisor, the Defendant Vardis Benson. (Id. ¶ 12.) Benson then called Conway. (Id. ¶ 13.) Conway told Benson, who was off duty at the time, to go to the restaurant. (Conway Statement of Facts ¶ 8.) Conway told Benson that he would be met by a uniformed officer. (Id.) Conway made a phone call, and arranged to have a uniformed

officer sent to the restaurant. (Pl.'s Statement of Facts  ¶¶ 14-15.) The uniformed officer was the Defendant Michael Cummings. (Id. ¶ 17.)

Cummings and Benson met at the restaurant. (Id. ¶ 18.)  They saw the Plaintiff leave the restaurant and get into his vehicle. (Id. ¶ 21.)  As the Plaintiff drove away, Cummings began following him, with Benson trailing Cummings at a distance. (Id. ¶¶ 22-23.) At this point, the Defendants allege that the Plaintiff was weaving in his lane, often connecting with the center line, as well as the line bordering the shoulder. (Id. ¶ 33.) The Plaintiff was approaching an intersection, and signaled to switch into the right lane. (Id. ¶ 27.) As he began to move into the right lane, he changed his mind, and returned to his original lane after signaling again. (Id.) Cummings alleges that this occurred abruptly and that the Plaintiff failed to signal, thus prompting him to pull the Plaintiff over. (Id. ¶¶ 34-35, 40.)

Upon approaching the Plaintiff's vehicle, Cummings smelled alcohol on the Plaintiff's breath, and the Plaintiff admitted to having consumed at least two beers. (Id. ¶¶ 38, 41.) Cummings further alleges that the Plaintiff had glazed eyes. (Id. ¶ 38.) Cummings asked the Plaintiff to exit the vehicle, and directed the Plaintiff to perform three field sobriety tests. (Id. ¶¶ 42, 45, 51, 67.) The parties dispute how the tests were

administered and how the Plaintiff performed.[1] Cummings arrested the Plaintiff on suspicion that the Plaintiff was driving under the influence. (Id. ¶ 76.)

The Plaintiff was then taken to the Gwinnett County Detention Center. (Id. ¶ 84.) Kevin Casal, a certified operator for the Intoxilyzer 5000, administered a breathalyzer test on the Plaintiff. (Id. ¶ 100.) Two "breath samples" were provided. (Id. ¶ 102.) For both samples, the Intoxilyzer registered a 0.00% blood alcohol level. (Id. ¶¶ 104-105.) Cummings, doubting the accuracy of the Intoxilyzer, asked for the Plaintiff's consent to conduct a blood test. (Id. ¶ 126.) The Plaintiff responded, "I don't want to go, but I'll go." (Id. ¶ 130.) The Plaintiff was taken to the Gwinnett County Medical Center for a blood test. (Id. ¶ 147.) Once completed, the Plaintiff was taken back to the Detention Center, briefly placed in a holding cell, and eventually released. (Id. ¶¶ 155, 163, 169.)  A few days later, the results of the blood test came back negative for alcohol.  The charges against the Plaintiff were dropped, and Conway held a press conference where he publicly apologized to the Plaintiff.

---

[1] For example, Cummings administered an "alphabet test," which the Plaintiff claims is not validated by the National High Traffic Safety Administration (NHTSA). (Pl.'s Resp. to Mot. for Summ. J., at 21.) The Plaintiff alleges that the "walk-and-turn" and "one-leg-stand" tests were not administered in a manner consistent with NHTSA standards. (Id. at 22-24, 28-29.) The Plaintiff also alleges that Cummings impermissibly chose not to administer the horizontal gaze nystagmus test, considered the "most reliable field sobriety test," because the Plaintiff told him he had a "non-specific eye problem." (Id. at 20-21.)

(Conway Statement of Facts ¶¶ 49-50.)  In this lawsuit, the Plaintiff asserts claims for false arrest under the Fourth Amendment, duty to release under the Fourth Amendment, First Amendment retaliation, and false imprisonment under state law.

## II. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient  showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir.1990).

III. Discussion

A.  Federal Claims

1. False Arrest

As an initial matter, Conway argues that because it was Cummings that arrested the Plaintiff and subsequently prolonged the detention, Conway is not liable for either. "It is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks omitted). "Supervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." Id. "A causal connection can . . . be established by facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Braddy v. Florida Dep't of Labor & Employment Sec., 133 F.3d 797, 802 (11th Cir. 1998).

The Plaintiff alleges that "Conway directed the acts of his employees at every step of the investigation," or "[a]t the very least . . . Conway failed to intervene to protect Bannister after learning of the breath results and . . . ratified the unconstitutional actions of his subordinate employees." (Pl.'s Resp. to Mot. for Summ. J., at 46-47.) The Plaintiff has no direct evidence supporting these allegations. Instead, he provides evidence indicating that: (1) Conway was in contact with Cummings and Benson over the course of the arrest; (2) shortly after the arrest a news story about it appeared online; and (3) Conway took the Intoxilyzer out of service after the incident to have it checked. (Pl.'s Resp. to Mot. for Summ. J., at 44-46.)  To draw the inference that Conway directed the arrest is too great a logical leap from these facts. Conway's testimony that he neither ordered Cummings to arrest the Plaintiff or prolong the detention, nor knew that Cummings would do so is unrebutted. (Conway Dep. at 130, 132, 143.) Cummings himself, who is subject to potential liability, never suggests that he arrested the Plaintiff or prolonged the detention at Conway's direction. (Cummings Dep. at 142.) "Although [a]ll reasonable inferences arising from the evidence must be resolved in favor of the non-movant on a motion for summary judgment, inferences based upon speculation are not reasonable." Sims v. Nguyen, 403 Fed. Appx. 410, 412

(11th Cir. 2010) (internal quotation marks omitted). The Defendant Conway's request for summary judgment as to the Plaintiff's section 1983 claims should be granted.[2]

The Plaintiff claims that Cummings did not have probable cause to arrest him. "A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim." Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996). "Probable cause to arrest exists if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed or is committing an offense." Id. However, there will be no liability if the officer is entitled to qualified immunity. See Pearson v. Callahan, 555 U.S. 223, 231 (2009). "To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004) (internal

---

[2] The Plaintiff also alleges that Conway sent Benson and Cummings to the restaurant to "catch" the Plaintiff. (Pl.'s Resp. to Mot. for Summ. J., at 44.) Even if this were true, it does not follow that Conway directed them to arrest the Plaintiff under any circumstance. It is just as reasonable an inference that Conway expected that they would follow his instructions in a lawful manner. See Gonzalez, 325 F.3d at 1236 ("[T]he reasonable inference which we must draw . . . is that the supervisory defendants ordered the execution of valid search and arrest warrants with the expectation that the agents on the scene would execute them in a lawful manner."). Conway testified that he did not expect them to take action without probable cause. (Conway Dep. at 116.)

quotation marks omitted). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Id. (internal quotation marks omitted). The Plaintiff must show that the alleged constitutional violation was "clearly established." See Pearson, 555 U.S. at 232. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

In this action, it must be "clearly established that the circumstances with which" Cummings was "confronted did not constitute probable cause." Id. at 640-41. "In wrongful arrest cases, we have defined the 'clearly-established' prong as an 'arguable probable cause' inquiry." Moran v. Cameron, 362 Fed. Appx. 88, 93 (11th Cir. 2010). This is "a more lenient standard than probable cause." Id. at 94. The Court may first determine whether the alleged violation was "clearly established" without resolving whether there was an actual constitutional violation. See Pearson, 555 U.S. at 236.[3]

Here, it was not clearly established that probable cause was lacking based on the undisputed facts. The Plaintiff concedes that he told Cummings he had consumed at least two beers earlier in the evening, and he concedes that his breath gave off an

---

[3] The Plaintiff was arrested under O.C.G.A. § 40-6-391: "(a) A person shall not drive or be in actual physical control of any moving vehicle while: . . . (1) Under the influence of alcohol to the extent that it is less safe for the person to drive."

odor of alcohol. (Bannister Dep. at 121-22.) The Plaintiff also admits that he began changing lanes, and abruptly swerved back  into his original lane. (Bannister Dep. at 96.) ("I signaled to go over, started over. I don't think I got all the way over. And I said, no, I'm going straight . . . [s]o I signaled the opposite direction and pulled in, *almost simultaneously*.").[4] The Plaintiff alleges that he signaled before he turned. This may dispute the claim that he violated a traffic law, but it does not deny that this could be seen as "weaving," especially to an officer who knew that the driver had been consuming alcohol. In addition, the Plaintiff does not dispute that his eyes appeared "glassy" or "red." In his deposition, he only stated that he has a condition known as "dry eye," and that his eyes may appear red when tired. (Bannister Dep. at 127.)

It is generally difficult to show that a constitutional violation was clearly established when it requires a fact-specific inquiry. See Coffin v. Brandau, 642 F.3d 999, 1015 (11th Cir. 2011) ("'Obvious clarity' cases, rare in general, will be even more rare in the Fourth Amendment expectation of privacy context because it is inherently fact-specific, thus not lending itself to clearly established law."); Poulakis v. Rogers, 341 Fed. Appx. 523, 528 (11th Cir. 2009) (The Eleventh Circuit has "said many times

---

[4] Bannister further reiterated: "I gave consideration of turning right . . . [a]nd then *almost immediately* said, no, I'm going on across." (Bannister Dep. at 95-96.) "[I] signaled to make the lane change[,] I probably didn't get out of the original lane, to be honest with you." (Bannister Dep. at 96.)

that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant."). Here, the Plaintiff's burden of showing that it was clearly established that Cummings lacked probable cause is even more insurmountable given that courts have often found probable cause based on comparable evidence. In <u>Frederick v. State</u>, 270 Ga. App. 397 (2004), the officer administered field sobriety tests but had no recollection of what the results were. The court concluded that "even without the field sobriety tests, the experienced officer's undisputed testimony that Frederick smelled of alcohol, admitted that he had been drinking, and had glossy eyes sufficed to create probable cause for the arrest." <u>Id.</u> In <u>Temples v. State</u>, 228 Ga. App. 228, 229 (1997), the officer pulled the defendant over because the passengers were not wearing seat belts. There was no indication of erratic driving. The officer detected an odor of alcohol on the defendant's breath, observed that the defendant's eyes were bloodshot, and administered an alco-sensor test which revealed the presence of alcohol. <u>Id.</u> at 231. The court concluded that "[u]nder the totality of the circumstances, probable cause existed for [the defendant's] arrest for DUI." <u>Id.</u> These cases demonstrate that, even excluding the contested evidence, it could not have been sufficiently clear to Cummings that he lacked probable cause at the time of the Plaintiff's arrest.

The Plaintiff asserts that "no objectively reasonable, minimally competent officer would have believed that such evidence supported an arrest for DUI." (Pl.'s Resp. to Mot. for Summ. J., at 55.) The Plaintiff cites Strickland v. City of Dothan, Alabama, 399 F. Supp. 2d 1275 (M.D. Ala. 2005) in support. The Plaintiff incorrectly states that the court denied summary judgment for the false arrest claim. (Pl.'s Resp. to Mot. for Summ. J., at 34.) The court granted the defendant's motion after finding arguable probable cause. Strickland, 399 F. Supp. 2d at 1291 ("Although the court finds that Summers's administration of the field sobriety-tests was incompetent, her decision that probable cause existed for a DUI arrest . . . was not unreasonable in light of the information she possessed at that time. . . .For that reason, Summers is entitled to qualified immunity on Strickland's claim arising out of the arrest."). To be sure, a plaintiff does not always have to provide a case with similar facts to show that the violation was clearly established. There will be circumstances where a violation will be so obvious that a prior case declaring it so is unnecessary. See United States v. Lanier, 520 U.S. 259, 271 (1997) ("[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful."). However, when there are cases in which courts have found probable

cause based on comparable evidence, it cannot be obvious that there was no probable cause.

The Plaintiff also argues that evidence was fabricated or obtained from improperly administered field sobriety tests. (Pl.'s Resp. to Mot. for Summ. J., at 18-29, 35.) As stated, even excluding the challenged evidence, it was not clearly established that the remaining evidence was insufficient to create probable cause. The Plaintiff incorrectly presumes that evidence from a field sobriety test is necessary to establish probable cause for a DUI charge. (Pl.'s Resp. to Mot. for Summ. J., at 31.) In the two cases discussed above where probable cause was found based on comparable evidence, Frederick and Temples, the courts did not have evidence from a field sobriety test. Courts have often explicitly dispelled of the idea that evidence from a field sobriety test is needed. See Cann-Hanson v. State, 223 Ga. App. 690, 691 (1996) ("*Even in the absence of the field sobriety tests*, the officer's observation that [the defendant] had bloodshot, watery eyes and exuded an odor of alcohol was sufficient to show probable cause to arrest him for driving under the influence.").

Finally, the Plaintiff argues that the arrest was motivated by ill will. However, proof of "ulterior motives" does not "invalidate police conduct that is justified on the basis of probable cause." U.S. v. Holloman, 113 F.3d 192, 194 (11th Cir. 1997); see also Whren v. U.S., 517 U.S. 806, 813 (1996) ( "Subjective intentions play no role in

ordinary, probable-cause Fourth Amendment analysis."). "The [arguable probable cause] standard is an objective one and does not include an inquiry into the officer's subjective intent or beliefs." Grider v. City of Auburn, Ala., 618 F.3d 1240, 1257 (11th Cir. 2010); see also Bloom v. Alvereze, 498 Fed. Appx. 867, 880 (11th Cir. 2012) ("While the Blooms allege that Officer Peacock acted out of personal animosity in her attempt to ruin Mr. Bloom, these bare allegations of malice do not prevent a finding of arguable probable cause."). The Plaintiff overlooks the broader role of qualified immunity. Concluding that qualified immunity is inapplicable to a case such as this would impact all officers, regardless of whether their intentions are benign or malicious. It would deter officers with comparable evidence from enforcing a DUI law out of fear that they will be subjected to civil penalties for unknowingly violating constitutional rights. This would undermine the very purpose of the qualified immunity doctrine. See Anderson, 483 U.S. at 638 ("[P]ermitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties."). Summary judgment as to the Plaintiff's false arrest claim against the Defendants Conway, Cummings, and Benson should be granted.

2.  Unreasonable Detention

The Plaintiff argues that the Defendants violated his Fourth Amendment rights by refusing to release him from custody after the Intoxilyzer test revealed that his blood alcohol level was 0.00%. Cummings and Benson are entitled to qualified immunity as to this claim as well. The alleged violation cannot be clearly established because the constitutional duty to release is itself not clearly established. The holding of Festa v. Santa Rosa Cnty. Florida, 413 Fed. Appx. 182, 186 (11th Cir. 2011) is – although not binding precedent – instructive:

> [N]o decision from the United States Supreme Court, this Court, nor the [State] Supreme Court has clearly established that continued detention after an arrestee registers a breath-alcohol level of 0.05 or less is unconstitutional. Indeed, neither the United States Supreme Court, this Court, nor the [State] Supreme Court has established within what time frame nor under what circumstances an officer has an affirmative duty to release an arrestee. We therefore cannot conclude that [the defendants] had fair warning that their continued detention of [the plaintiff] was unconstitutional.[5]

The Plaintiff argues that the facts were different in Festa. However, its holding is broad enough to encompass this case. Cummings did not have fair warning regarding the circumstances under which he would be required to release the Plaintiff. The Plaintiff also argues that the Eleventh Circuit affirmed Strickland, in which the district

---

[5] Although Festa did not speak to whether the Georgia Supreme Court has clearly established an affirmative constitutional duty to release, the Plaintiff offers no case indicating it has.

court denied qualified immunity for a constitutional duty to release claim. <u>See</u> <u>Strickland</u>, 399 F. Supp. 2d at 1293, <u>aff'd</u> <u>sub</u> <u>nom.</u> <u>Strickland v. Summers</u>, 210 Fed. Appx. 983 (11th Cir. 2006). The Plaintiff is correct that there is tension between <u>Strickland</u> and <u>Festa</u>. There are two reasons why Cummings and Benson are still entitled to qualified immunity. First, this tension itself proves that the law is not clearly established. Second, in <u>Strickland,</u> the district court found a constitutional duty to release by citing to the First Circuit, the Fifth Circuit, and a previous Middle District of Alabama decision. <u>Id.</u> at 1291. However, "[i]n this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose."[6] <u>Jenkins by Hall v. Talladega City Bd. of Educ.</u>, 115 F.3d 821, 827 n.4 (11th Cir. 1997). In <u>Festa</u>, the Circuit Court reiterated this in a footnote: "the district court's decision-*which relies on out-of-circuit and out-of-state case law*-does not appear to include a discussion of how Defendants' conduct violated the clearly-established prong of the qualified immunity inquiry." <u>Festa v. Santa Rosa</u> <u>Cnty. Florida</u>, 413 Fed. Appx. 182, 186 n.3 (11th Cir. 2011) (emphasis added).

---

[6] This does not conflict with the Court's use of Georgia Court of Appeals' decisions in the false arrest discussion. The Eleventh Circuit itself has cited to lower state court decisions as evidence that a particular violation was *not* clearly established. <u>See</u> <u>Coffin v. Brandau</u>, 642 F.3d 999, 1016-17 (11th Cir. 2011).

Summary judgment as to the Plaintiff's unreasonable detention claim against the Defendants Cummings and Benson should be granted.

### 3. Retaliation

The Plaintiff claims that Conway ordered the false arrest and prolonged detention in retaliation for the Plaintiff's political speech as Chairman of the Gwinnett County Board of Commissioners. (Pl.'s Resp. to Mot. for Summ. J., at 48.) "To state a claim for retaliation for exercising their First Amendment rights a plaintiff must establish that: (1) the speech or act was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech; and (3) a causal connection existed between the retaliatory conduct and the adverse effect on speech." Bethel v. Town of Loxley, 221 Fed. Appx. 812, 813 (11th Cir. 2006).

Cummings and Benson first argue that arguable probable cause for the arrest and prolonged detention precludes a First Amendment retaliation claim. A plaintiff may not sustain a First Amendment retaliation claim based on acts protected by qualified immunity. See Redd v. City of Enter., 140 F.3d 1378, 1383 (11th Cir. 1998) ("Because we hold that the officers had arguable probable cause to arrest Anderson for disorderly conduct, we must hold that the officers are also entitled to qualified immunity from the plaintiffs' First Amendment claims."). Consequently, neither the arrest nor the prolonged detention may serve as the basis for a retaliation claim.

The Defendants also argue that the Plaintiff cannot establish a causal connection between the Plaintiff's political speech and Cummings' allegedly adverse actions. "In order to establish a causal connection, the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech." Castle v. Appalachian Technical College, 631 F.3d 1194, 1197 (11th Cir. 2011). Here, there is no allegation that Cummings' subjective motivation was to retaliate against the Plaintiff for his political speech. The Plaintiff's theory of causation is based on the allegation that Conway ordered the arrest and prolonged detention. (Pl.'s Resp. to Mot. for Summ. J., at 48.) The Court has already determined that the Plaintiff's evidence is insufficient to support this allegation. Thus, summary judgment as to the Plaintiff's First Amendment retaliation claim against the Defendants Cummings and Benson should be granted.

B. State Law Claim for False Imprisonment

The Plaintiff claims that the Defendants falsely imprisoned him. "False imprisonment is the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." O.C.G.A. § 51-7-20. However, "a court must consider as a threshold issue whether the officer is entitled to qualified immunity from personal liability in a lawsuit for damages." Cameron v. Lang, 274 Ga. 122 (2001). Under the Georgia Constitution, "all officers and

employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions." GA. CONST. Art. I, § 2, ¶ IX(d). Thus, official immunity applies to discretionary functions, but not ministerial functions. See Howell v. Willis, 317 Ga. App. 199, 201 (2012) ("[T]he court determines whether those acts were discretionary or ministerial in determining whether the employee is entitled to official immunity.").

Although the Plaintiff does not address official immunity under Georgia law in his brief, his complaint states that Cummings was performing a ministerial duty when he arrested the Plaintiff. (Compl. ¶¶ 148, 150.) "Whether a duty is ministerial or discretionary turns on the character of the specific act itself." Reed v. DeKalb Cnty., 264 Ga. App. 83, 86 (2003). "Unlike a ministerial act, a discretionary act calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." Id. "[T]he decision to effectuate a warrantless arrest generally is a discretionary act requiring personal judgment and deliberation on the part of the

officer." Id. The Court concludes that Cummings was performing a discretionary act when he arrested the Plaintiff, thus he is entitled to official immunity.

Moreover, the Plaintiff's general allegations of malice do not overcome official immunity. Piercing official immunity requires a showing of *actual* malice, which means "a deliberate intention to do wrong." Merrow v. Hawkins, 266 Ga. 390, 391 (1996). "Actual malice requires more than harboring bad feelings about another." Adams v. Hazelwood, 271 Ga. 414, 415 (1999). "[I]ll will must also be combined with the intent to do something wrongful or illegal . . . the subjective mental state of a public officer . . . is irrelevant unless that mental state prompts the public officer . . . to intend a legally unjustifiable action." Id. The Plaintiff would have to show that Cummings knew his actions were unlawful. See Taylor v. Waldo, 309 Ga. App. 108, 111 (2011) ("There is no evidence that the officers deliberately intended to wrongfully arrest and imprison Taylor."). If Cummings mistakenly believed that the arrest was permissible, he is entitled to official immunity under Georgia law. See Reed, 264 Ga. App. at 86 ("Even when an arresting officer operates on a mistaken belief that an arrest is appropriate, official immunity still applies."). Here, Cummings subjectively believed that the Plaintiff was driving under the influence. Consequently, he believed he could arrest the Plaintiff pursuant to O.C.G.A. § 17-4-20(a): "An arrest for a crime may be made by a law enforcement officer . . . (2) [w]ithout a warrant if . . . (A) [t]he

offense is committed in such officer's presence or within such officer's immediate knowledge." Any allegation of a conspiracy between Conway, Benson, and Cummings to unlawfully arrest the Plaintiff is based on pure speculation. Summary judgment as to the Plaintiff's false imprisonment claim against the Defendant Cummings should be granted. Having no independent basis, summary judgment as to the Plaintiff's false imprisonment claim against the Defendants Benson and Conway should be granted.[7]

IV. Conclusion

For the reasons set forth above, the Court GRANTS the Defendant Conway's Motion for Summary Judgment [Doc. 57] and  GRANTS the Defendant Benson and Cummings' Motion for Summary Judgment [Doc. 55].

---

[7] The Plaintiff cites Strickland where the court denied summary judgment on a false imprisonment claim. It is unclear whether the showing required to defeat official immunity in Alabama is as stringent as in Georgia. In Alabama, a plaintiff may overcome official immunity by showing "that the defendant acted in bad faith or with malice or willfulness." Ex parte Davis, 721 So. 2d 685, 689 (Ala. 1998). The Georgia Supreme Court reasoned that there is a material difference between "malice" and "*actual* malice." See Merrow, 266 Ga. at 392 ("[I]t is 'actual malice,' not mere 'malice,' that is addressed. . . [w]e find the term 'actual malice,' . . . to denote 'express malice or malice in fact.'").

SO ORDERED, this 23 day of October, 2013.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge